IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                          No. CR 03-624 RB

JAMES FLYNN HARDCASTLE,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

The Government requested the Court hold a hearing to consider the conditional release of Defendant James Flynn Hardcastle who, although never convicted of a federal charge, has been in federal custody for over a decade under civil commitment statutes. Having reviewed the parties' arguments and the hefty record associated with this case, the Court orders that Mr. Hardcastle be conditionally released subject to the conditions described herein.

**I.    BACKGROUND**

Mr. James Flynn Hardcastle was indicted for being a felon in possession of a firearm on April 2, 2003. (Indictment, Doc. 1.) The charge was based on an incident on March 29, 2002. Mr. Hardcastle has been in custody since 2002 and has been in federal custody since 2003. (Docs. 10, 13.) When Mr. Hardcastle was arrested, he already had a long history of criminal violence and mental health instability. (Risk Assessment Panel Report, Doc. 104 at 3-4, 7.) He was diagnosed with schizophrenia at the age of 16 (Doc. 104 at 3) and continues to hear voices "24/7." (Hr'g, Mar. 31, 2015.)

In May 2003, Defense Counsel and the Government filed a joint motion to determine Mr. Hardcastle's competency to stand trial. (Doc. 14.) Defendant was sent to the United States

Medical Center for Federal Prisoners at Springfield, Missouri ("Springfield"), where he was deemed competent to stand trial. (Doc. 19.) The Court agreed with the finding and set the case for trial. (*Id.*)

One week before trial, Defense Counsel again moved to have Mr. Hardcastle evaluated, this time by a local psychiatrist. (Doc. 25.) After an initial finding of incompetency, Mr. Hardcastle was ordered back to Springfield in December 2003. (Doc. 66 at 2.) While at Springfield, Mr. Hardcastle refused to take his medications and his condition worsened. (Risk Assessment Report, Feb. 11, 2005.) He became "belligerent" and sent letters threatening to kill his defense counsel, the presiding judge, and his clinician. (*Id.* at 2.) The letters, which included colorful, coarse, and violent language, were handwritten and signed by Mr. Hardcastle. (Doc. 52.) The case was reassigned to a new judge.

In June 2004, the United States Magistrate Judge held a *Sell* hearing and determined that Mr. Hardcastle should be treated with antipsychotic drugs involuntarily, if necessary. (Doc. 43; Doc. 66 at 2.) The Springfield Warden informed the Court that Mr. Hardcastle remained incompetent to stand trial and was unlikely to become competent in the foreseeable future. (Springfield Warden Letter to Court, Mar. 14, 2005.) The Court ordered Springfield to evaluate Mr. Hardcastle under the Section 4246(d) civil commitment standards. (Doc. 49.) Shortly thereafter, the Springfield clinical staff determined that Mr. Hardcastle's mental illness did not cause him to be a substantial risk of bodily injury to others. (Letter, July 6, 2005.) Although Mr. Hardcastle was incompetent to stand trial, Springfield did not consider Section 4246 civil commitment to be an appropriate measure. (*Id.*) On August 29, 2005, the Court held a hearing on the matter. (Doc. 53.)

The Honorable Bruce Black, presiding over the hearing, determined that Mr. Hardcastle was both mentally ill and dangerous. (Doc. 54.) The Court disagreed with Springfield's opinion that Mr. Hardcastle did not pose a substantial risk of harm. Looking to Mr. Hardcastle's violent criminal history, the then-recent threatening letters, and his resistance to medication, the Court determined that Mr. Hardcastle was a danger to others according to the clear and convincing evidence.[1] (*Id.* at 1-4.) Judge Black ordered Mr. Hardcastle committed to the custody of the Attorney General pursuant to Section 4246(d) until "Hardcastle's medical condition is such that his release, or his conditional release under a prescribed regimen . . . would not create a substantial risk of bodily injury to another person or serious damage to the property of another . . . ." (Doc. 56.) Commitments under this statute are indefinite. To serve out his long-term detention, Mr. Hardcastle was transferred to the Federal Medical Center in Devens, Massachusetts ("FMC Devens"). (Doc. 104 at 5.)

Each year between 2007 and 2012, the staff at FMC Devens opined that Mr. Hardcastle did not pose a substantial risk to persons or property and should be conditionally released. (FMC Devens Letter to Court, Nov. 1, 2007; FMC Devens Letter to Court, Nov. 20, 2008; FMC Devens Letter to Court, June 4, 2009; FMC Devens Letter to Court, June 23, 2010; FMC Devens Letter to Court, Jan. 13, 2012.) Every year, the Honorable Judge Black denied the conditional release on the ground that the proposed placements were not sufficiently secure. (Letter to Warden, Dec. 5, 2007; Letter to Warden, Jan. 9, 2009; Letter to Warden, June 23, 2009; Letter to Warden, July 26, 2010; Minutes, Mar. 20, 2012, Doc. 86.) Judge Black reasoned that unless Mr. Hardcastle was in a secure facility under surveillance, he would continue to be dangerous. In September 2012, the case was reassigned here, to the Honorable Robert C. Brack. (Doc. 88.)

---

[1] The Court amended its order to make the express finding that there were no suitable options for state custody. (Doc. 56.)

During the year of 2012, Mr. Hardcastle's condition deteriorated. (Doc. 104 at 5-6.) He "began expressing increasingly paranoid ideas about a government conspiracy to keep him hospitalized." (*Id.* at 5.) He linked the shooting of Gabby Giffords and the Aurora theater shooting to the government conspiracy. (*Id.*) He reported writing several letters to the President, but FMC Devens staff never found any evidence of the letters. (*Id.* at 5-6; Hr'g, Mar. 31, 2015.) The FMC Devens staff is unsure what caused the deterioration. (Hr'g, Mar. 31, 2015.) Even during this time, however, Mr. Hardcastle did not receive any incident reports involving aggressive acts.[2] (FMC Devens Letter to Court, Nov. 9, 2012, Doc. 94.) Based on this deterioration, in the letter dated November 9, 2012, FMC Devens did not recommend Mr. Hardcastle's immediate release. (*Id.*) This Court accepted the recommendation during its first status conference on the matter. (Doc. 93.)

On March 14, 2014, the FMC Devens Warden wrote that Mr. Hardcastle had substantially improved and was recommended for conditional release. (Doc. 95.) At a status conference in July 2014, counsel informed the Court that Mr. Hardcastle's social worker found a possible placement in Albuquerque, New Mexico. (Doc. 97.) The Government moved for a hearing pursuant to Section 4246(e). (Doc. 102.) The Court held the hearing on March 31, 2015. (Doc. 105.)

## II.     DISCUSSION

By enacting 18 U.S.C. §§ 4241-4248, Congress authorized the federal government to civilly commit "individuals who are, or who become, mentally incompetent at any time after their arrest and before the expiration of their federal sentence." *United States v. Comstock*, 560 U.S. 126, 140 (2010). In particular, Section 4246 provides for the indefinite commitment of any

---

[2] Mr. Hardcastle was cited for being unsanitary or untidy in 2012. (Doc. 94.)

4

person who "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another . . . ." 18 U.S.C. § 4246(a). Congress enacted Section 4246 to "avert the public danger likely to ensue from the release of mentally ill and dangerous detainees." *Comstock*, 560 U.S. at 142 (quoting *United States v. S.A.*, 129 F.3d 995, 999 (8th Cir. 1997)).

At this point, Mr. Hardcastle has been in federal custody for twelve years. Including the time he spent in state custody, he has been confined for a total of thirteen years. The original charge against him was felony firearm possession, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) The Government charged him with 18 US.C. § 924(e), which prescribes a minimum of fifteen years imprisonment for anyone who previously committed three violent felonies. 18 US.C. § 924(e)(1). Otherwise, the statutory maximum for felon in possession is ten years. 18 U.S.C. § 924(a)(2). Mr. Hardcastle has been in custody for a significant portion of any sentence he would have received had he been able to stand trial and been found guilty.

The text of the statute shows that Congress disfavors indefinite federal custody. The Attorney General is commanded to release a detainee from custody as soon as the detainee's mental health has sufficiently improved or a state will assume custody over the detainee—"whichever is earlier." 18 U.S.C. § 4246(d). Congress also commanded the Attorney General to "exert all reasonable efforts" to persuade a state to take responsibility. *Id.* These commands show Congress' preference for finding alternate accommodations for a detainee, rather than keeping a detainee in permanent federal custody. Although the state of New Mexico refuses to accept legal responsibility for Mr. Hardcastle (Hr'g, Mar. 31, 2015), the staff at FMC Devens strived to find a suitable alternate facility.

Indefinite federal custody over a defendant who has never been convicted of a federal crime has the potential to run afoul of the Constitution. *See Florida v. Garrett*, 454 U.S. 1004, 1009 (1981) (comparing unlawful indefinite detentions to lawful detentions). The Supreme Court previously prohibited the "indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial." *Jackson v. Indiana*, 406 U.S. 715, 731 (1972). In order to justify long-term federal civil commitment, the district court must make a finding of dangerousness. *Greenwood v. United States*, 350 U.S. 366, 375 (1956). If a court finds a detainee to be incompetent and dangerous, the federal government has the "power to make th[e] initial commitment . . . ." *Id.* In order to justify the continued detention of a person, a court must be satisfied that the person is an on-going risk to society. Under the statue, if a medical facility director "determines that the person has recovered from his mental disease or defect to such an extent that his release would no longer create a substantial risk," the director must "promptly" notify the court. 18 U.S.C. § 4246(e). Upon receiving such notice, the court "shall order the discharge of the person or . . . shall hold a hearing . . . to determine whether he shall be released." *Id.* If, after the hearing, the court finds that the person has sufficiently recovered, then the court must discharge or conditionally release the person. *Id.*

At a hearing pursuant to Section 4246, a court must be satisfied, by a preponderance of the evidence, that:

> (1) [the detainee's] release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another . . . or (2) [that] his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another[.]

§ 4246(e). The preponderance standard for release or conditional discharge is much lower than

the burden of proof for the initial commitment, which requires clear and convincing evidence. *See United States v. Pinson*, 542 F.3d 822, 838 (10th Cir. 2008) ("In order to impose such long-term commitment, the government must demonstrate at a hearing, by clear and convincing evidence, that the defendant poses a risk to the public because of a mental abnormality or personality disorder that is beyond his control."). The expert medical opinion, a review of Mr. Hardcastle's recent history, and the United States Probation Officers' opinion all show that Mr. Hardcastle's conditional release is appropriate.

First of all, the Warden at FMC Devens certifies that Mr. Hardcastle has sufficiently recovered to the point where his conditional release would not create a substantial risk of bodily injury to another person or serious injury to property. (Doc. 104.) With the exception of late 2012, the staff at FMC Devens has repeatedly certified this recommendation to the Court. At the hearing, Dr. Channell repeated this recommendation. Dr. Channell testified that Mr. Hardcastle has not been physically violent, nor has he refused his medication, since 2004. (Hr'g, Mar. 31, 2015.) Even during Mr. Hardcastle's relapse during 2012 and early 2013, he was not physically violent and lived in the lowest security unit with cell mates. (*Id.*) There were no rebuttal witnesses or contradictory medical opinions. Thus, the uncontested medical expert opinion states that Mr. Hardcastle should be conditionally released.

Second, the Court's review of Mr. Hardcastle's recent actions shows that he has been nonviolent and compliant with his treatment. Without a doubt, Mr. Hardcastle's letters in 2004 were graphic and disturbing. However, the letters are increasingly stale. For the past eleven years, Mr. Hardcastle has not threatened physical aggression. He continues to suffer from paranoid delusions and auditory hallucinations. At the hearing, Mr. Hardcastle stated that he hears voices all the time and goes to sleep listening to them. (Hr'g, Mar. 31, 2015.) Currently,

the voices do not order him to commit acts of violence; they monitor Mr. Hardcastle's movements. (*Id.*)  Mr. Hardcastle also testified that he is willing to take his medications and abide by the rules of his conditional release. (*Id.*)  He stated that it is much easier taking once-a-month Haldol injections than taking daily doses of medications.  The Court has some concern about Mr. Hardcastle's inexplicable relapse in 2012, but as mentioned previously, even in this agitated state, Mr. Hardcastle did not commit or threaten any physical acts of violence.

Finally, the United States Probation Officer confirms that the conditional release plan is a workable and suitable placement for Mr. Hardcastle.  According to the Probation Officer Jason Towne, the proposed placement has a good program for people living with schizophrenia. (Hr'g, Mar. 31, 2015.)  Cassa de Marillita, the proposed placement facility, has the appropriate resources to work with Mr. Hardcastle and monitor his state. (*Id.*)  The Cassa de Marillita staff can coordinate with the University of New Mexico Health Sciences Center to ensure that Mr. Hardcastle gets his monthly Haldol injection. (*Id.*)  Although nothing is ever guaranteed, the Probation Officer assured the Court that the Probation Office was willing and able to supervise the conditional release plan. (*Id.*)

Based on the preponderance of the evidence, the Court finds that Mr. Hardcastle will not create a substantial risk of bodily injury or serious damage to property if he is released under the proposed regimen.  The Court agrees with the FMC Devens Warden and the United States Probation Office that the conditional release plan is appropriate.  Mr. Hardcastle is hereby **CONDITIONALLY RELEASED** subject to the following conditions:

1. Mr. Hardcastle will reside at Cassa de Marillita Group Homes located in Albuquerque, New Mexico, run by Danny Martinez, telephone number (505) 315-4555.  Any changes in residence must be approved in advance through Mr. Hardcastle's United States Probation Officer.

2. Mr. Hardcastle shall participate in mental health and substance abuse services deemed necessary through Cassa de Marillita, University of New Mexico Psychiatric Hospital and/or through other agencies approved through the United States Probation Office.  Mr. Hardcastle will comply with treatment recommendations made by his United States Probation Officer or by his treatment providers.

3. Mr. Hardcastle will be monitored by mental health professionals and his United States Probation Officer for evidence of psychiatric difficulties and will continue to take medication, which may include injectable medications, as ordered.  The medications may be adjusted by his clinicians.

4. Upon the recommendation of the medical provider or United States Probation Officer, Mr. Hardcastle will voluntarily admit himself into a hospital for treatment.  If he refuses and his continued release would create a substantial risk of bodily injury to himself, another person, or serious damage to the property of another, he should be remanded to a suitable facility pursuant to 18 U.S.C. § 4246(f).

5. Mr. Hardcastle will be supervised by the United States Probation Office, District of New Mexico.  This includes his voluntary consent to waive his rights to confidentiality regarding his mental health treatment in order to allow sharing of information with the supervising United States Probation Officer, who will assist in evaluating the ongoing appropriateness of Mr. Hardcastle's community placement.  Mr. Hardcastle will be required to sign a release of information which will be provided to all treatment providers.

6. Mr. Hardcastle will remain under the supervision of the United States Probation Office until he is discharged from all mental health treatment and/or his federal civil commitment.  The primary treatment provider may be changed with the approval of the United States Probation Office.

7. Mr. Hardcastle shall not have in his possession at any time any actual or imitation firearm, destructive device, or other deadly weapon.  For the purpose of determining compliance with this condition, Mr. Hardcastle shall submit to a search of his person or property, including any vehicle or premises, without a warrant at the request of a United States Probation Officer or any law enforcement officer.  If he is found to possess a firearm, his conditional release must be revoked.

8. Mr. Hardcastle shall abstain from the use of alcohol, illegal narcotic substances, or other drugs.  He shall not frequent places where alcohol or illegal drugs are known to be the primary item of possession, manufacture, or distribution.  If determined necessary by the

      United States Probation Office, he will participate in substance abuse treatment and be required to participate in random drug and breathalyzer testing.

9. Mr. Hardcastle shall not commit another federal, state, or local crime.

10. Mr. Hardcastle is forbidden from loitering near or having direct or indirect contact with the following individuals: Senior United States District Judge Bruce D. Black, Senior United States District Judge James A. Parker, Federal Public Defender Bernadette Sedillo, defense attorney Paul Rubino, and retired New Mexico District Judge Stephen Bridgforth.

11. The United States Marshals Service shall be notified to return Mr. Hardcastle to the custody of the Attorney General if it is determined that Mr. Hardcastle has violated any conditions which are established for him.

(Johnson Letter to Court, Apr. 6, 2015.)

      As a condition of release, Mr. Hardcastle must comply with this prescribed regimen of medical, psychiatric, or psychological care and treatment. Furthermore, the Cassa de Marillita staff is under an obligation to monitor Mr. Hardcastle and to notify the Attorney General if Mr. Hardcastle becomes noncompliant. § 4246(f). If Mr. Hardcastle fails to comply with the conditions, the Court may revoke his conditional discharge. (*Id.*)

      "[T]he court at any time may, after a hearing employing the same criteria, modify or eliminate the regimen of medical, psychiatric or psychological care or treatment." § 4246(e). At any time, the medical provider or United States Probation Office may recommend modifying the regimen of medical, psychiatric or psychological care or treatment, upon certification that doing so would not create a substantial risk of bodily injury to another person or serious damage to the property of another. After a period of five years, the medical provider or United States Probation Office may recommend terminating the regimen of medical, psychiatric or psychological care or treatment. To modify or terminate the conditions of release, the requesting party must submit a motion to this Court, with adequate documentation supporting the request, and provide copies to the United States Probation Office, the United States Attorney, and Mr. Hardcastle's counsel.

**THEREFORE**,

**IT IS ORDERED** that the Government's Motion for a Hearing (Doc. 102) was **GRANTED**.

**IT IS FURTHER ORDERED** that James Flynn Hardcastle be conditionally released subject to the conditions prescribed herein.

As soon as all release arrangements are satisfactory and complete, James Flynn Hardcastle shall be escorted to the Albuquerque, N.M., Probation Office. The Bureau of Prisons shall contact the assigned Probation Officer to make transportation arrangements to escort Mr. Hardcastle and to schedule an arrival date. The United States Probation Officer shall notify the Court of Mr. Hardcastle's actual release date from FMC Devens.

**IT IS SO ORDERED.**

_____
**ROBERT C. BRACK**
UNITED STATES DISTRICT JUDGE